The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning everyone. We have four argued cases today and one case submitted on the briefs. The first argument is appeal number 20-1708 NuVasive v. Hirshfeld. Mr. Rosado, whenever you're ready. Thank you, Judge Chen, and may it please the court. This is the second appeal in an inter-parties re-exam that's been pending nearly a decade and the board's current decision repeats the same errors identified in the board's prior decision that was before this court. Subject to questions, I'll address three main issues. The first is that what is now the board's third decision in this case represents yet another new ground of rejection to which NuVasive was never accorded an opportunity to respond. And second, just like the board's prior obviousness theory that was subject to vague TOR and remand, the board's new obviousness theory is based on an unsubstantiated motivation to combine that just doesn't make anatomical sense. And then third and finally, despite the remand instructions from this court to consider objective indicia of non-obviousness, as we read the decision, it's apparent that the board did no such thing while it acknowledged the court's instructions on remand. It then proceeded to repeat the exact same content of the decision that this court had vacated. Each of these issues represent an independent reason why the decision should not stand. And I'll start with the court's permission with a new ground of rejection. And to the extent it's helpful for the court, I want to point out that there is a bulleted chronology of the case at pages 14 through 16 of NuVasive's reply brief. And what we see is that the last time NuVasive had an opportunity to respond to a rejection or submit evidence in this case was in September 2014, nearly seven years ago. And at that point, NuVasive had significantly amended Claim 17. And in response, the examiner allowed the amended claims with no rejection, and Globus, the original requester, abandoned participation in the contest. So the only rejections to ever be applied against these amended claims is where the board entered new rejections and made those decisions final. That happened in the board's second decision, which was previously before this court, and remanded as having a new rejection. And it occurred again in the current decision. Judge Chen, this new ground of rejection theme, did you raise this in your blue brief? I don't remember this. I remember your argument that there is no substantial evidence of the motivation to combine, and then also that the board incorrectly analyzed the secondary consideration evidence. I don't remember an argument saying the board somehow did something inappropriate by returning to a theory of motivation to combine these two references that it had expressed in its first board decision. So, yeah, I want to address this idea of returning, but to answer your first question, Your Honor, it was certainly raised. I would direct attention to page 4 of the brief. The final paragraph starts to address this issue, where it states that the board's third decision is also procedurally infirm. The board refused to designate its rejection as a new ground, and it continues on there. And there's additional argument, including a section within the brief itself. Was it in your argument section? Yes. Let me find you the page. Thanks. It's in the argument section. It begins at page 35. It asks if the court does not reverse the board, it should at a minimum be remanded based on APA due process. And there's additional argument on that point. All right. That's the summary of the argument, right? That's the summary. Sure. And page 65 continues the argument. Let me make sure I have the page right on that. Sorry, page 62. The board erred by denying the base of an adequate opportunity to respond to the board's rejection of amended claim 17, and it continues on from there. So what would you say differently in a new brief to the board that you did not say to the board the first time around when the board in the first decision for claim 19, which has now been incorporated into your amended claim 17, for arguing against the combination of Kauffman and Kelleher? Sure, Your Honor. That's an important question. We would have a lot to say, because we've never had a chance to say anything about this. Again, we significantly amended claim 17. It does not simply include the content of claim 19. I know that argument is raised in the PTO's brief, but that's incorrect, and that's verified by simple comparison of the two claims. But as I understand, the old claim 19, it was about doing neuromonitoring for a lateral approach to spinal surgery through the psoas muscle. That's what basically claim 19 covered, right? Claim 19 merely recited the generic term neuromonitoring. Amended claim 17 was amended to recite EMG-based neuromonitoring that's directional and proximity-based and which occurs during the process of creating the distraction surgical corridor. So claim 17 includes far more detail and is far narrower and significantly different in scope than claim 19. So it's a completely different and new claim. It looks nothing like claim 19. So it's very different in scope, and that went before the examiner. The examiner reviewed that claim, reviewed the art, and allowed the claims. So again, we never had any opportunity to respond to any rejection of this amended claim. Again, the only rejections that have occurred are the ones the board made in its decisions and made final in violation of its own rules, which require that if the board enters a new ground... Right. I'm just trying to understand what is it that you wanted to further argue, especially in light of what this court said in its 2018 opinion, where it heard your arguments about why a skilled artisan would not combine Gossman and Kelleher, and we specifically rejected that. Well, it heard some arguments, and we have to appreciate there's a very unusual procedural posture where argument was really cut off and dates back years and years ago as it pertains to a different claim and the decision to amend that claim significantly presented a claim of different scope. I'm talking about what happened in this court's opinion in 2018, which is about the very same claim or claims that we have in front of us now, and is also about the very two references that we have in front of us now, Gossman and Kelleher. Right. So you'll recall, Your Honor, that the reason a new ground was found in that instance is because the board in its second decision had moved beyond this... had just said neuromonitoring. They had moved their rationale far beyond the generic assertion that neuromonitoring was known to the specific rationale that the particular neuromonitoring of Kelleher would have been imported to monitor for these particularly identified sensory neurons, the iliohypogastric and ilioinguinal nerves. That was the issue before this court previously. That was not only a new theory, but one that made no anatomical sense, as Kelleher is a system that's designed to monitor for a very specific type of nerve, motor nerves that innervate the patient's legs. So as we explained to this court at the time, had we been... I'm sorry. We don't have a lot of time here. I'm really focused on what this court said at pinpoint 998 in the Kauffman and Kelleher section, where we summarized some of Nuvasiv's arguments against the motivation to combine Kelleher's neuromonitoring with Kauffman's surgical procedure, and we identified them, and we rejected them. There was some briefing that occurred, and there was some analysis that occurred, and then there were some rulings that occurred. And the court agreed with us on the point that this new theory of once the board moved to a specific type of nerve, and they had to based on these specific claims. Right. Take the two nerves out. Don't worry about the two nerves. That's not what we're focused on. That's not the thrust of my question. My question is that you want to argue a bunch of things, and I'm trying to figure out how to deal with those arguments, given that they appear to have already been asked and answered by this court in the prior opinion at this particular pinpoint. And that's where the new thrust of the board's current rejection comes in. They've replaced those other specific nerves with a new set of specific nerves that were never raised in the prior opinion. The board is now proposing that monitoring would occur specifically to detect motor neurons of the lumbar plexus. That never comes up in the first decision. It was never in a rejection by the examiner. And we have a lot to say about that. We addressed this in our briefing, but the bottom line is that the board is now proposing. They're doing the same thing. They've replaced one specific set of nerves with a different specific set of nerves that were never addressed. What is that other specific set of nerves you're talking about? They're talking in the board's decision. They repeatedly raised the motor neurons of the lumbar plexus. It's identified many times in the third decision from A12 to A16. That never came up in the first decision. So despite the board saying we're going to return, they hit rewind and then continue to hit fast forward and come up with a completely new theory. Mr. Rosato, you're into your rebuttal, but I want to make sure you get to save some of it. If there's anything else you want to say, I'll give you another minute right now, and then we have to move on. Thank you, Your Honor. So I'll just say on that theory, and this is an important question to address that you raised, what would we say? We would point out that the new theory replaces the old with specific nerves, and there's no evidence to support that. There's no evidence those specifically identified nerves are implicated in the Kossman surgery. And the literature of reference indicates that those nerves are not implicated in Kossman surgery. They're located in a different portion of the psoas muscle that's not implicated by Kossman. So we would certainly have a lot to say about this, and it's a rebuttable new rejection. And it's also hindsight. There's nothing in either reference, either Kossman or Kelleher, about the lumbar plexus nerves. There's nothing in the declaration of Globus' expert Dr. Lieberman at 443447 of the appendix about the lumbar plexus nerves. He doesn't mention them. Okay. I think we have to move on unless my colleagues have a specific question for you. Okay. And with that, I would just say, as I indicated in the opening, that there's no indication that the objective indicia received meaningful consideration either. And with that, I'll hold. Okay. Let's hear from the government. Thank you, Your Honor. May it please the Court. In light of this Court's guidance in its 2018 opinion, substantial evidence supports the Board's finding as to each of the two issues that this Court remanded on. My friend who represents Nuvasiv suggests that somehow the Board created some sort of new ground of rejection. But what the Board actually did was turn back to its original finding from the 2014 Board decision as this Court stated that it was permitted to do and it found that a skilled artisan would have used Kelleher's nerve monitoring system in Kossman's lateral transphallus procedure as it was no more than a predictable use of systems to improve surgery outcomes. I'm not clear why Nuvasiv's counsel is saying that there was some sort of focus on a specific nerve when it reverted back to this 2014 decision, but that is not what the Board did. The Board simply turned back and said Kossman's lateral transphallus procedure is looking to avoid nerve damage. Kelleher's nerve monitoring system provides that technique, so it's a predictable use of systems. With respect to the second issue that this Court remanded on, substantial evidence also supports... I'm going to ask you to look at JNA 15, page 14 of the Board... I'm sorry, Your Honor. Could you say that again, please? JNA 15, page 14. In the middle of the page, there is a reference to lumbar plexus nerve structures. Yes, Your Honor. And what's the significance of that for purposes of the 103 analysis? So, much of the lumbar plexus runs through the psoas muscle itself. It's a big region. And that conversation came up because Nuvasiv makes this argument that there would not be a motivation to combine the references because Kossman's lateral transphallus procedure allegedly only works through a quote-unquote safe zone of the muscle. And isn't this, in this opinion, isn't this the first time the lumbar plexus nerves show up? It's not the first time, but again, I just want to be clear. Your adversary's argument is that he hasn't had an opportunity to argue that the combination of the two references, because of the possibility of lumbar plexus nerve structures, that that gives strength to the combination. And he says, I'm sort of being bushwhacked, this is the first time I've heard about that, he's saying. So, I just want to be clear that the board wasn't relying on this idea that the prior art references could be combined because of this lumbar plexus. How do we know that they weren't relying on it? Well, because if you look at APPX 11 through 12, the board is citing basically turning back to its first decision and giving the reason why it's combining the references. And there's that sort of block quote where it's talking about the fact that Kossman is concerned with nerve during this procedure and that Kelleher basically can be used predictably to aid in that concern. The only reason that lumbar plexus discussion even comes up is because it's being responsive to this sort of false argument that the psoas muscle has some part of it that does not have nerves. And so, the board made several findings, which was, one, even if the psoas muscle had some sort of safe zone, that falls within the scope of the trans-psoas path, which this court also found, because the 057 doesn't limit a lateral trans-psoas path to go directly through some particular part of the psoas muscle. And then it also said that there are so many variations in anatomy of people that there are no guarantees that there are no nerves in this quote unquote safe zone, which again is not really a thing. It's just something that Newvasive used to say, hey, there's some part of the psoas muscle that doesn't really have a lot of nerves and that's what Kossman is doing. And so, when the board brought up this lumbar plexus statement, the board is basically trying to say, wait a minute, Kossman is doing a lateral trans-psoas procedure and we believe that there are nerves in the psoas muscle, but in addition, there is a lumbar plexus which runs through the psoas muscle itself and there is also nerves in there. So, if you're even trying to attempt to get there, there is a concern for a skilled artisan to avoid nerve damage, but it's not some new thing that it's relying on. The board literally went back to the 2014 opinion and took from there, which this court said that the board was allowed to do on page 29, APPX 2958, which is also 752, fed APPX at 999. So, in addition to the motivation to combine, in addition to the fact that the board had substantial evidence which supports its finding of a motivation to combine, substantial evidence also supports the board's finding that the objective evidence, when taken as a whole, failed to outweigh what the prior art proved. Invasive, this court found that there was a nexus between the claimed invention and the XLIF technology and products and allowed the board to go back and consider objective evidence given that finding. And the board did just that. And even with the nexus, found that as a whole, Invasive didn't have a strong enough objective evidence to override the strong primasasia case. With respect to the commercial success, they didn't provide evidence that that commercial success was directly tied to the XLIF surgical techniques and products. The success was due to auxiliary products. In addition, they didn't provide market share evidence that was directly tied to the specific XLIF market share. And with respect to long sell and unmet need, the board found that because Kauffman itself and Globus' expert, Dr. Lieberman, was able to show that skilled artisans were taking the trans-OS approach before the 057 patent, that there was no unsatisfied long sell unmet need. And with respect to skepticism and praise, the board considered all of that evidence as well and found that it did not weigh against the strong primasasia case. So unless this court has any additional questions for me, we would ask that they affirm the board's decision. And that's my time. Okay. Thank you, Ms. Lateef. We'll restore Mr. Rosato's five minutes of rebuttal. Thank you, Your Honor. In response, I'd like to again point out that the lumbar plexus nerves are mentioned at least a half a dozen times in the board's decision. A12, A13, 14, 15, 16. You see this repeatedly. It's central to the board's theory in the new rejection in the latest decision. The lumbar plexus is not discussed at all in the first decision. It's unquestionably new, and it is critical to the theory here. The board needed the specificity and the rationale, and this is the one that they advanced. There are problems with that rationale in that... Just so I understand, what Well, I don't think it was referring to any nerves. It was looking at a dependent claim that simply recited the term neuromonitoring generically. And what the board said in the first decision is, it looks like monitoring for nerves was known in the art. Your claims generic were good here. Nuvasiv made the decision to amend their... And claim 17 didn't recite neuromonitoring at all. I'm just trying to understand, because it was already well known that the lumbar plexus, with all of its nerves, is located in the psoas muscle, and that those nerves shouldn't be come into contact with, right? Why wouldn't you, therefore, want to make sure, if you're going to do some kind of surgical technique through the psoas muscle, avoid the lumbar plexus? Right. So you're citing the board's argument that the lumbar plexus was known, but they don't go into any more... This is an instance where a little bit of knowledge is dangerous. They don't go into what precisely was known. And what we know from Gray's Anatomy, and it's in the anterior part of the psoas. I'm quoting from Gray's Anatomy. There's additional evidence in the reply brief at pages 5 through 6. So what is known is that the lumbar plexus is not in a region that's implicated in Kossman. This is something the board never seems to appreciate. They also don't seem to appreciate how Kelleher works. It's monitoring for a particular type of nerve. The examiner appreciated this, went through the references, and made findings that she wasn't seeing a rationale for this. You've got a reference that's, you know, neither of the references say anything about the lumbar plexus or nerves. Didn't your expert, Philip, say something about how that the nerves, the lumbar plexus, are a complex and unpredictable maze within the psoas muscle? And then citing some other work by another doctor who points out there's a large degree of variation of the location of the lumbar plexus in the psoas? I would say the board mischaracterizes that testimony. What the board says is that we know where the lumbar plexus is located as far as it being in the posterior. Now, within the posterior portion, there's variability between patients, but that's neither surprising nor does it solve the board's problem here. Kossman is not in the posterior portion. So the board misappropriates or misunderstands that argument. It would be akin to saying patients have variability in the morphology of their ears, so you'd expect them to have an ear on their arm. Well, we know that's not true. Could you point to something that, just so before you go, is there something you can point to in the record where Philip or someone else says, here's the section that has no nerves. You don't have to worry about this section of the psoas muscle. Again, Gray's Anatomy, Your Honor, first line of the section lumbar plexus states the lumbar plexus is in the posterior part of the psoas. There's a number of other references of record that are outlined in the reply brief at pages five through six. I think there's two other literature references that say this. And there's fact findings from the board's second decision. Oddly, which they've stripped out of this, but I would point to A2923 where the board is characterizing Kossman, and it says Kossman teaches a lateral approach known to be capable of performing safely through the safe zone even without neuromoderating. So even the board previously was looking at Kossman and saying, at most this goes through the area where there aren't any nerves. They've dropped that out, pulled in this new rationale, and never give us an opportunity to respond. If I can finish one. Okay. You can go ahead and give me another sentence. Thanks. Thank you, Your Honor. I just want to say a comparison on secondary indicia of the current decision with the prior decision will show there's a literal cut-and-paste job. Content is literally cut-and-pasted. There's no indication there is independent analysis. Thank you. Okay. Thank you. The case is submitted.